**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 24-52-DLB-EBA**

**ERIC EASLEY**                                            **PLAINTIFF**

**v.**              **MEMORANDUM OPINION AND ORDER**

**MARATHON PETROLEUM LOGISTICS SERVICES LLC**
**CHASE KEFFER**                                       **DEFENDANTS**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court upon two Motions: (1) Plaintiff Eric Easley's Motion to Remand Case to the Boyd County Circuit Court (Doc. # 5) and (2) Defendant Chase Keffer's Motion to Dismiss (Doc. # 6). The Motions have been fully briefed (Docs. # 8, 10, 13, and 15) and are ripe for review. For the following reasons, Easley's Motion to Remand is **denied** and Keffer's Motion to Dismiss is **granted**.

**I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises from a terminated employment relationship between Easley, as employee, and Marathon Petroleum Logistics Services LLC, as employer. (Doc. # 1-1 at 2). Easley, an African American man, is a resident of Huntington, West Virginia. (*Id.* at 1-2). Marathon is a limited liability company and is a citizen of Delaware and Ohio. (Doc. # 1 ¶ 4). Keffer is an individual and resident of Winfield, West Virginia, and is an agent and employee of Marathon. (Doc. # 1-1 at 2).

Easley worked for Marathon from September 30, 2019, until October 24, 2023. (*Id.*). He worked as a "Tankerman, Mate 2, and Deckhand," earning $297 per day. (*Id.*).

Easley's work schedule required him to work for 28 consecutive days, after which he would be off for a 28-day period.  (*Id.* at 3).  According to Easley, his employment with Marathon was "largely without incident."  (*Id.* at 2).

On October 22, 2023, Easley attended two funerals that were held simultaneously.  (*Id.* at 3).  After the funerals, Easley socially consumed alcohol but claims that he did not become intoxicated.  (*Id.*).  According to Easley, Marathon's local company supervisors knew about his attendance at the funerals.  (*Id.*).  The following day at around 6:30 a.m., Easley reported to work.  (*Id.*).  Upon his arrival, Easley learned that Marathon would be conducting a random drug screen of its employees that day.  (*Id.*).  According to Easley, this was the first time that he had been subjected to a random drug screen while employed by Marathon.  (*Id.*).

After completing the drug screen, Easley was informed that his blood alcohol content was recorded at .015 percent, or just over Marathon's .014 percent cutoff for risk of termination.  (*Id.*).  As a result, Easley was suspended and forced to leave the premises.  (*Id.* at 3-4).  After returning to the premises later that day to retrieve his personal belongings, Easley discovered that his employee badge had been deactivated.  (*Id.* at 4).  He was terminated that same day.  (*Id.*).  Easley alleges that prior to his termination, he "had only minor disciplinary issues, if any."  (*Id.*).

Easley alleges that one of his white co-workers also failed the alcohol screen but was not terminated from his employment.  (*Id.*).  Easley further alleges that Keffer "knew that [Easley's] white counterpart had failed the same alcohol examination as [Easley] but chose not to enact [*sic*] the same level of discipline on the white employee."  (*Id.*).

2

Additionally, Easley alleges that due to his position, Keffer could have intervened in preventing Easley's termination but chose not to do so. (*Id.*).

On April 5, 2024, Easley filed suit in the Boyd County Circuit Court asserting one count for "Discrimination/Retaliation Based on Race" under the Kentucky Civil Rights Act ("KCRA"). (Doc. # 1-1 at 4-6). On May 9, 2024, Defendants filed a Notice of Removal with this Court asserting diversity jurisdiction under 28 U.S.C. § 1332. (Doc. # 1 ¶ 3).

On May 16, 2024, Easley filed the Motion to Remand through which he requests that the Court remand this case to the Boyd County Circuit Court. (Doc. # 5). On that same date, Keffer filed the Motion to Dismiss through which he requests that the Court dismiss Easley's claim(s) against him. (Doc. # 6). The Motions have been fully briefed (Docs. # 8, 10, 13, and 15) and are ripe for review.

## II.   ANALYSIS

For the following reasons, the Motion to Remand is **denied** and the Motion to Dismiss is **granted**. The Court addresses each Motion in turn.

### A.   Motion to Remand

Through the Motion to Remand, Easley requests that the Court remand this case to the Boyd County Circuit Court. (Doc. # 5). In support, Easley argues that complete diversity is lacking between the parties as both Easley and Keffer are citizens of West Virginia. (Doc. # 5-1 at 3-4). Anticipating Defendants' argument to the contrary, Easley claims that Keffer was not fraudulently joined in this action. (*Id.* at 6-11). Additionally, Easley argues that Defendants cannot show that the amount-in-controversy requirement for diversity jurisdiction has been satisfied. (*Id.* at 4-5). Easley finally argues that the

3

Court lacks federal question jurisdiction over this case (*id.* at 6), which Defendants do not contest.

In their Response, Defendants first argue that Keffer's West Virginia citizenship should be ignored because he was fraudulently joined in this action. (Doc. # 10 at 3-5). Defendants also argue that they can "easily meet the amount-in-controversy requirement by a preponderance of the evidence, exclusive of interest and costs." (*Id.* at 5-7). Easley contests each of these claims in his Reply. (Doc. # 13).

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal based on diversity jurisdiction, as occurred here, requires both complete diversity and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332; *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). Complete diversity requires that no plaintiff and no defendant be citizens of the same state. *V & M Star*, 596 F.3d at 355. "The party seeking removal bears the burden of establishing its right thereto." *Her Majesty the Queen in Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

Parties contesting removal on the grounds of subject-matter jurisdiction may file a motion to remand at any time following the notice of removal and prior to final judgment. 28 U.S.C. § 1447(c). "The removal petition is to be strictly construed," *Her Majesty*, 874 F.2d at 339, and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999).

4

There is no dispute that Easley and Keffer are both citizens of West Virginia. (*See* Doc. # 5-1 at 4; *see also* Doc. # 10 at 1-3). Accordingly, unless Keffer's West Virginia citizenship may be disregarded, there is not complete diversity between the parties and the Court lacks subject matter jurisdiction over this case. Therefore, the merits of the Motion to Remand turn on two separate inquiries: (1) whether the Court may disregard Keffer's West Virginia citizenship under the doctrine of fraudulent joinder and (2) whether Defendants have satisfied the amount-in-controversy requirement by a preponderance of the evidence. The Court addresses each inquiry in turn.

### 1. *Keffer Was Fraudulently Joined*

The doctrine of "fraudulent joinder" allows federal courts to sever a non-diverse defendant from a case when "the claim against him is so frivolous that its only conceivable purpose is to destroy diversity and prevent removal." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 592 (E.D. Ky. 2011). "Claims of fraudulent joinder must be asserted with particularity and supported by clear and convincing evidence." *Parker v. Crete Carrier Corp.*, 914 F. Supp. 156, 159 (E.D. Ky. 1996). The inquiry is whether the plaintiff has at least a colorable cause of action against the defendant in state court. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999). Defendants "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493 (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). In other words, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander*, 13 F.3d at 949.

5

Because the removing party bears the burden of demonstrating fraudulent joinder, all disputed questions of fact and ambiguities in the controlling state law are resolved in favor of the non-moving party, and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493. "Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Federal Rule 12(b)(6)." *Anderson v. Merck & Co., Inc.*, 417 F. Supp. 2d 842, 845 (E.D. Ky. 2006) (collecting cases).

Where, as here, a plaintiff's claims are based on Kentucky law, Kentucky pleading rules apply in the fraudulent joinder context. *Combs v. ICG Hazard LLC,* 934 F. Supp. 2d 915, 923 (E.D. Ky. 2013). "In Kentucky, a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 924 (quoting Ky. R. Civ. P. 8.01(1)(a)). Under Rule 8.01, a court "may dismiss a complaint only where a plaintiff would not be entitled to relief under any set of facts which could be proved." *Combs*, 934 F. Supp. 2d at 924 (quoting *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010)) (internal quotation marks omitted). "Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *Grayson*, 317 S.W.3d at 7 (quoting *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002)). "It is immaterial whether the complaint states conclusions or facts as long as fair notice is given." *Combs*, 934 F. Supp. 2d at 924 (quoting *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960)). Moreover, "the Rules of Civil Procedure with respect to stating a cause of action should be liberally construed and much leniency should be shown in construing whether a complaint . . . states a cause of action. *Combs*, 934 F. Supp. 2d at 924 (quoting *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989)) (internal quotation marks

6

omitted).

Before addressing fraudulent joinder, the Court must address a preliminary issue. Easley's Complaint only asserts one claim against Defendants for "Discrimination/Retaliation Based on Race." (Doc. # 1-1 at 4-6). In his Motion to Remand, Easley concedes that "an individual [like Keffer] cannot . . . be liable under the KCRA for *discrimination*[.]" (Doc. # 5-1 at 10) (emphasis added); *accord Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 794 (6th Cir. 2000). But as Easley notes (*see* Doc. # 5-1 at 10), this limitation "does not apply to *retaliation* claims brought under Ky. Rev. Stat. § 344.280." *Morris*, 201 F.3d at 794 (emphasis added). Thus, whether Keffer was fraudulently joined turns on whether he had adequate notice of any retaliation claim against him. For the following reasons, the Court concludes that he did not.

Easley's Complaint contains only two brief references to any retaliation claim. The first reference, as noted above, is Easley's characterization of his claim as one for "Discrimination/*Retaliation* Based on Race." (Doc. # 1-1 at 4) (emphasis added). The second reference is an allegation that "[t]he Defendants' actions, as described [in the Complaint], are *retaliatory* in nature, and, in whole or in part, are motivated by [Easley's] *disability*." (*Id.* at 5) (emphasis added). Regarding this latter allegation, Defendants note, and the Court agrees, that it "is obviously extraneous[ ] given the reference to an alleged 'disability' that has not been raised in this case . . . ." (Doc. # 10 at 4-5). Although there appears to be a dearth of caselaw on the question, the Court does not see how Easley's merely extraneous use of the words "retaliation" and "retaliatory" constitutes fair notice of his retaliation claim, even under Kentucky's relaxed pleading standard. And apart from using the words "retaliation" and "retaliatory," the Complaint, when read as a whole, puts

7

Keffer on notice of a discrimination claim rather than a retaliation claim.[1]  Indeed, Easley spends virtually all of his Complaint making allegations relevant to a discrimination claim, such as that he (1) is a member of a protected class by virtue of his race, (2) was terminated by Marathon after allegedly violating the company's "alcohol polices," (3) was qualified for his position based on his nearly four and a half years of employment with Marathon, and (4) was treated less favorably than one of his white co-workers.  (Doc. # 1-1 at 1-6).

Moreover, Easley's Complaint contains neither factual allegations nor conclusions regarding at least three elements of a prima facie retaliation claim.  In relevant part, the KCRA makes it unlawful "[t]o retaliate . . . in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter[.]"  Ky. Rev. Stat. § 344.280.  "A *prima facie* case of retaliation requires a plaintiff to demonstrate: (1) that the plaintiff engaged in an activity protected by [the KCRA]; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action."  *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004).  Here, Easley neither alleges nor concludes that he engaged in any protected activity as described in § 344.280, much less that Keffer

---

[1]  For reference, the elements of a prima facie KCRA discrimination claim are: "(1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position; and (4) that a comparable person outside the protected class was treated more favorable than the plaintiff." *White v. Coventry Health & Life Ins. Co.*, No. 3:14-cv-00645-CRS, 2015 WL 6680908, at *7 (W.D. Ky. Nov. 2, 2015) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)).

8

knew about such activity or that there is a casual connection between such activity and his termination.[2] (Doc. # 1-1).

It is, of course, theoretically possible for Easley to have suffered retaliation without alleging such in his Complaint or otherwise. But "[i]n assessing claims of fraudulent joinder, the potential for legal liability must be *reasonable*, not merely *theoretical*." *Simmerman v. Ace Bayou Corp.*, No. 5:14-cv-00382-DCR, 2014 WL 6633129, at *3 (E.D. Ky. Nov. 21, 2014) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)) (internal quotation marks omitted and emphasis added); *see also Alexander*, 13 F.3d at 949 (issue of fraudulent joinder turns on whether "there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved."). And in assessing fraudulent joinder, the Court "is obligated to look at the pleadings and determine whether the allegations against the non-diverse defendant can support a claim." *Cammack New Liberty, LLC v. Vizterra, LLC*, No. 3:09-cv-00015-DCR, 2009 WL 2043568, at *3 (E.D. Ky. July 13, 2009) (citing *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007)).

As noted above, the key inquiry here is whether Keffer had fair notice of any retaliation claim under Kentucky's lenient pleading standards. *See Combs*, 934 F. Supp. 2d at 924. For the foregoing reasons, the Court concludes that he did not, and that Keffer was accordingly fraudulently joined in this action. Because Keffer was fraudulently joined,

---

[2] To be clear, the Court does not conclude that Easley's failure to plead these elements is dispositive as to the issue of fraudulent joinder. As the Sixth Circuit has noted, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case [of discrimination][.]" *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002)). Rather, the Court merely notes that the Complaint's lack of allegations or conclusions as to these elements is at least relevant to whether Keffer had fair notice of any retaliation claim, which is the critical inquiry here. *See Combs*, 934 F. Supp. 2d at 924.

his West Virginia citizenship is appropriately disregarded by this Court. And in the absence of any other challenge on the issue, the Court concludes that there is complete diversity between the parties.

### 2. Defendants Have Satisfied the Amount-in-Controversy Requirement by a Preponderance of the Evidence

Having determined that there is complete diversity between the parties, the Court now addresses whether Defendants have satisfied the amount-in-controversy requirement by a preponderance of the evidence. For the following reasons, the Court concludes that they have.

When a state's civil procedure rules prohibit a complaint from containing a specific request for damages, a removing defendant must show that the amount-in-controversy requirement is met by a preponderance of the evidence. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157-58 (6th Cir. 1993), *abrogated on other grounds by Hertz v. Friend*, 559 U.S. 77 (2010)). Kentucky has such a civil procedure rule and thus Defendants "bear[ ] the burden of demonstrating that the district court has original jurisdiction;" they "must set forth . . . specific facts supporting the assertion that the amount in controversy exceeds the amount required by statute." *Adkins v. Kroger Ltd. P'ship I*, No. 5:18-cv-00156-DCR, 2018 WL 1611592, at * 1 (E.D. Ky. Apr. 3, 2018) (*quoting Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 481 (6th Cir. 2014)).

"In workplace [ ] discrimination and retaliation cases, defendants routinely establish the amount in controversy by calculating the value of the plaintiff's compensatory and

punitive damages."[3] *Estate of Beard v. G4S Secure Sols. USA, Inc.*, No. 3:18-cv-00493-RGJ, 2019 WL 1410909, at *2 (W.D. Ky. Mar. 28, 2019) (collecting cases). "Back pay accrued through the projected trial date is properly included in the amount-in-controversy calculation where—as here—the plaintiff seeks past and future wages." *Blocker v. PPG Indus., Inc.*, No. 3:17-cv-00029-DJH, 2017 WL 3431136, at *3 (W.D. Ky. Aug. 9, 2017) (quoting *Shupe*, 556 F. App'x at 480) (internal quotation marks omitted).

In addition to back pay, courts "consider other types of damages and fees . . . including emotional-distress damages, punitive damages, and statutory attorney's fees." *Beard*, 2019 WL 1410909, at *2. In *Shupe*, for example, "the Sixth Circuit upheld the district court's finding that the amount in controversy" requirement was satisfied "when the defendant presented evidence that the plaintiff earned $15 per hour and worked 42.5 hours per week." *Id.* (citing *Shupe*, 556 F. App'x at 480). Assuming that the trial would occur one year after removal, the plaintiff's total back pay would equal $68,250. *Id.* In considering this amount "together with the plaintiff's request for damages for humiliation, embarrassment, and attorney's fees, . . . the court found that it was more likely than not that the amount in controversy" requirement was satisfied. *Id.*

Easley alleges that while working for Marathon, he earned $297 per day for 28 consecutive days of work after which he would be off for a period of 28 days. (Doc. # 1-1 at 2-3). As Defendants note, Easley's daily rate of $297 multiplied by 28 yields wages of $8,316 per work period. (Doc. # 10 at 6). Between Easley's termination date of October 24, 2023, and the filing of his Complaint on April 5, 2024, three working periods

---

[3] Easley alleges that because of Defendants' actions, he "has suffered and will continue to suffer lost wages and other fringe benefits." (Doc. # 1-1 at 5). In terms of relief, Easley requests an award of compensatory and punitive damages, statutory costs, and attorney's fees. (*Id.* at 6).

occurred, meaning that Easley would have been paid $24,948 had he not been terminated. (*Id.*). If this case reaches trial within one year of its removal of May 9, 2024, then an additional seven working periods would have occurred. *See Blocker*, 2017 WL 3431136, at *3 (calculating projected pre-trial back pay "one year from removal[.]"). Assuming his claims were successful, Easely would be owed an additional $58,212, bringing his total back pay to $83,160 which itself satisfies the amount-in-controversy requirement notwithstanding any additional award of damages or attorney's fees.

For these reasons, the Court concludes that it is more likely than not that this case involves an amount in controversy greater than $75,000, exclusive of interest and costs. Having already concluded that there is complete diversity between the parties, the Court concludes that it has subject matter jurisdiction over this case. Easley's Motion to Remand (Doc. # 5) is accordingly **denied**.

### B. Motion to Dismiss

Through the Motion to Dismiss, Keffer moves for the dismissal of Easley's Complaint against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 6). In support, Keffer argues that Easley's discrimination claim against him must fail because such claims may not be brought against non-employer individuals like Keffer. (*Id.* at 2-3). Keffer also argues that any retaliation claim against him must fail because Easely did not adequately plead such claim in his Complaint. (*Id.* at 3-5).

As already noted, Easley concedes, and this Court agrees, that discrimination claims under the KCRA may not be brought against non-employer individuals such as Keffer. Moreover, this Court already determined that Easley failed to state a retaliation claim against Keffer under Kentucky's lenient pleading rules. As a result, Easley has

12

failed to state a retaliation claim under the more exacting federal pleading standards, which "apply to a civil action after it is removed from a state court." *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 771 (E.D. Ky. 2017) (quoting Fed. R. Civ. P. 81(c)).  For these reasons, Keffer's Motion to Dismiss (Doc. # 6) is **granted**.

### III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

(1)    Plaintiff Eric Easley's Motion to Remand Case to the Boyd County Circuit Court (Doc. # 5) is **DENIED**;

(2)    Defendant Chase Keffer's Motion to Dismiss (Doc. # 6) is **GRANTED**; and

(3)    Plaintiff Eric Easley's Complaint (Doc. # 1-1 at 1-6) is **DISMISSED** against Defendant Chase Keffer.

This 4th day of October, 2024.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2024\24-52 MOO re Remand and MTD.docx