**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 24-52-DLB-EBA**

**ERIC EASLEY**                                                                                                                               **PLAINTIFF**

**v.**                         **MEMORANDUM OPINION AND ORDER**

**MARATHON PETROLEUM LOGISTICS SERVICES LLC**          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Marathon Petroleum Logistics Services, LLC's ("Defendant") Motion for Summary Judgment. (Doc. # 38). The Motion has been fully briefed (Docs. # 41 and 42) and is therefore ripe for review. For the reasons set forth herein, Defendant's Motion for Summary Judgment is **granted**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a terminated employment relationship between Easley and Marathon Petroleum Logistics Services LLC, his former employer. (Doc. # 1-1 at 2). Defendant employed Easley, an African American man, from September 2019 through October 2023. (Doc. # 1-1 ¶ 10). Plaintiff worked as a Deckhand and Mate aboard two different ships operated by Defendant: The Texas City, and, subsequently, The Pakota. (Deposition of Eric Easley, Doc. # 38 at 1). Plaintiff's schedule with the Defendant included working for twenty-eight consecutive days, followed by twenty-eight consecutive days off work duty. (Doc. # 1-1 ¶ 12).

According to the Complaint, his employment with Marathon was "largely without incident." (Id. at 2). Indeed, he received a series of promotions while employed by

1

Defendant, advancing from Deckhand 3 to Deckhand 2, then to Deckhand 1, and ultimately to Mate 2.

As a Mate 2, Plaintiff's responsibilities included training deckhands, leading the deck crew, navigating ricker locks, and reading navigation instruments. (Docket # 38-1 at 11). Safety was a vital part of Plaintiff's role and a lapse in executing his duties safely would have "catastrophic" consequences.  (Id. at 29).

To ensure safety onboard its vessels, Defendant maintains safety policies and procedures including Drug and Alcohol Policy #10002 (the "Policy"), which includes a drug and alcohol testing program. (Doc. # 38-7). The testing program provided that employees are subject to drug testing upon hire, reasonable suspicion, return to work, and at random. (Doc. # 38-8 at 4). Defendant's policy establishes different types of discipline for violating the Policy, depending on the degree to which the Policy is violated. (See Doc. # 38-8). The relevant excerpts read:

> An employee whose blood alcohol content (BAC) is determined during work hours to be equivalent to or greater than .04 percent [has a "Prohibited Blood Alcohol Content" and is] in violation of the Policy . . . Employees who . . . have a Prohibited Blood Alcohol Content while working will be discharged.
>
> An employee whose BAC is determined during work hours to be greater than .000 percent, but not more than .019 percent, will be sent home from work for the remainder of their scheduled workday and, upon reporting for their next workday, may be required to complete a breath alcohol test demonstrating a BAC of .000 percent before returning to work.
>
> An employee whose BAC is determined during work hours to be equivalent to or greater than .020 percent, but not more than .039 percent, will be sent home from work for the remainder of their scheduled workday and may be required to

2

> submit to an evaluation/rehabilitation program specified by the Company before returning to work. In addition, upon reporting for their next workday, the employee may be required to complete a breath alcohol test demonstrating a BAC of .000 percent before returning to work.

(Doc. # 38-8 at 2, 6). The Policy is applied to all Defendant's employees. (Doc. #38-11 ¶ 8). For instance, since 2022, Defendant has terminated two Caucasian employees for violating the Policy with a Prohibited Blood Alcohol Content exceeding .040 percent. (Id.).

On October 24, 2023, Plaintiff reported to work to begin a twenty-eight-day assignment aboard The Pakota. (Doc. # 41 at 2). Prior to the beginning of the trip, Plaintiff was notified that he and his whole crew had been randomly selected for drug and alcohol screening. (Declaration of Chase Keffer Doc. # 38-11 ¶11). After conducting the initial screening test, if an employee's BAC is equal to or Greater than .020, Defendant conducts a confirmation test after a 15-minute waiting period. (Declaration of Natalie Walters Doc. # 38-10 ¶ 9). Two members of The Pakota crew tested at a BAC above .000: Plaintiff and Jeff Harvey. (Id. ¶ 11). Mr. Harvey is white. (Doc. # 41-1 at 43). Plaintiff's initial test showed a BAC of .064, and his confirmation test resulted in a BAC of 0.059. (Doc. # 38-10 ¶ 15). Mr. Harvey's tests resulted in BAC readings of 0.022 and 0.019, respectively. (Id. ¶ 13). In accordance with the Policy, Mr. Harvey was sent home from work, and because he did not have a Prohibited Blood Alcohol Content, he was permitted to return to work the following day, where he tested at a BAC of .000. (Id. ¶ 14; Doc. # 38-8 at 6). According to the Policy, Plaintiff's BAC qualified as a Prohibited Blood Alcohol Content, warranting his discharge. (Docs. # 38-10 ¶ 12).

Before Plaintiff's second test, the on-site Human Resources officer, Mr. Chase Keffer, was contacted regarding the results of Plaintiff's first test. (Doc. # 38-11 ¶ 16). Mr.

3

Keffer reported to the testing location and witnessed the administration of the second test, which resulted in a BAC reading of .059. (Id. ¶¶ 16, 18). Mr. Keffer alerted Plaintiff that his BAC exceeded the limits outlined in the Policy, and a calibration check was performed on the breathalyzer, which confirmed that the machine was in proper working order. (Id. ¶¶ 19-20). Plaintiff was presented with his BAC results and signed off on them, certifying that the results of the tests were accurate, and that he "must not drive, perform safety-sensitive duties, or operate heavy equipment" due to the results. (Doc. # 38-15). Defendant suspended Plaintiff pending an investigation of the results by Defendant's corporate office. (Doc. #38-1 at 6).

Natalie Walters, Senior HR Compliance Specialist, who works offsite in Findlay, Ohio, validated the results of Plaintiff's tests, and confirmed Plaintiff violated the Policy, and directed Mr. Keffer to initiate "deliberate documentation and next steps, making sure he was removed from the site and that his badge was deactivated." (Doc. # 38-10 ¶ 16). Following this determination, Mr. Keffer called Plaintiff to inform him of the validation of the results by Ms. Walters and terminated him effectively immediately. (Doc. # 38-11 ¶ 24).

On April 5, 2024, Plaintiff filed suit in the Boyd County Circuit Court asserting one count for "Discrimination/Retaliation Based on Race" under the Kentucky Civil Rights Act ("KCRA") against Defendant and Mr. Keffer. (Doc. # 1-1 at 4-6). On May 9, 2024, Defendants filed a Notice of Removal with this Court asserting diversity jurisdiction under 28 U.S.C. § 1332. (Doc. # 1 ¶ 3). On May 16, 2024, Easley filed a Motion to Remand through which he requested that the Court remand this case to the Boyd County Circuit Court. (Doc. # 5). On that same date, Mr. Keffer filed a Motion to Dismiss the claim(s)

against him. (Doc. # 6). This Court denied Plaintiff's Motion to Remand and granted Mr. Keffer's Motion to Dismiss. (Doc. # 17). The parties proceeded with discovery. Defendant now seeks judgment as a matter of law (Doc. # 38). Notably, Plaintiff does not oppose Defendant's Motion for Summary Judgment as to the retaliation claim. Accordingly, only the discrimination claim remains. (Doc. # 41 at 8). Defendant moves for summary judgment on that claim.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The movant may do so by "citing to particular parts or materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ.P. 56(c)(1)(A).

Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record

5

as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

Plaintiff alleges discrimination in violation of the KCRA, which states that it is an "unlawful practice for an employer . . . to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color . . ." Ky. Rev. Stat § 344.040(1)(a). The KCRA mirrors Title VII of the Civil Rights Act of 1964, and discrimination claims brought under the KCRA are analyzed in the same manner as those brought under Title VII. *Beatty v. Frito-Lay, Inc.*, 429 F. Supp. 3d 342, 347 (E.D. Ky. 2019) (*citing Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)). Plaintiffs can establish a claim of discrimination either by (1) introducing direct evidence of discrimination or (2) presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Here, the discrimination claim is based on circumstantial evidence; therefore, the Court employs the burden-shifting framework set forth in McDonnell Douglas. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

Under *McDonnell Douglas*, plaintiffs first have the burden of establishing a prima facie case of discrimination. Id. at 802. To establish a prima facie case of discrimination under the KCRA, Plaintiff must show that (1) they were a member of a protected class; (2) they suffered an adverse employment action; (3) that they were qualified for the position; and (4) that a person outside the protected class was treated more favorably than them. *See Id.; Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992); *Braithwaite v. Timken Co*., 258 F.3d 488, 493 (6th Cir. 2001); *Laster v. City of Kalamazoo,* 746 F.3d 714, 727 (6th Cir. 2014); *Clay v. United Parcel Serv., Inc*., 501 F.3d 695, 703 (6th Cir. 2007). If Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to articulate a "legitimate, non-discriminatory reason" for the employment decision. *Braithwaite*, 258 F.3d at 493 (internal quotation marks omitted). To meet this burden "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons" for its adverse employment decision. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

### III.     ANALYSIS

It is undisputed that Plaintiff satisfies the first two elements, as he is African American and was terminated by Defendant. The third and fourth elements are at issue. When analyzing the third element of a prima facie case of discrimination, "a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 575 (6th Cir. 2003). Plaintiff may carry this burden by "presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." Id. at 575-76. The court's inquiry should "focus on

7

criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." Id. at 576. Further, the court should not "rel[y] too heavily on the incident that caused [the employee's] termination in evaluating the qualification prong." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). Rather, the court should examine the wider range of circumstances related to the employee's qualifications. Id.

Here, Defendant alleges that "[w]here Mr. Easley failed a required test, he disqualified himself from his position, resulting in his discharge." (Doc. # 38 at 9). By failing the alcohol test as outlined in the Policy, Defendant asserts that Plaintiff failed to meet the objective qualifications of his job. In response, Plaintiff points to a long track-record of positive performance reviews and promotions to establish Plaintiff's qualifications as a Deckhand and Mate. (Docs. # 41-8, 41-9, 41-10, and 41-11).

In support of its position, Defendant cites this Court's holding in *Otto*, that because a police officer failed required firearms tests, he did not meet the minimum objective criteria required for employment. (Doc. # 38 at 9) (*citing Otto*, 2013 WL 5743909 at *4). However, this case is distinguishable from *Otto* in a number of ways. First, Plaintiff was employed by Defendant for roughly four years before his termination. (Doc. # 1-1 ¶ 10). In *Otto*, Plaintiff was a new police officer, terminated due to his inability to pass the firearm qualifications necessary for the role. 2013 WL 5743909 at *1-2. Plaintiff was a proficient Deckhand and Mate. Plaintiff further proved he could pass the drug and alcohol screenings, as he had been drug and alcohol tested on at least four separate occasions prior to his termination without testing at a BAC above .000. (Doc. # 38-1 at 69).

8

Furthermore, Plaintiff was qualified enough to train other Deckhands, lead the deck crew, navigate locks, and read navigational instruments. Id. at 11.

Without "rel[ying] too heavily on the incident that caused [Plaintiff's] termination," *Loyd*, 766 F.3d at 590, Plaintiff is uniquely qualified to work as a Deckhand or Mate. During his four years aboard Defendant's ships, he received consistently high scores on his "Qualification Feedback Forms", demonstrating his proficiency as a Deckhand. (See Docs. # 41-8, 41-9, 41-10, and 41-11). Plaintiff was promoted three times during his tenure with Defendant, further proving his qualifications to operate as a Deckhand or Mate. (Doc. # 41 at 1). While Plaintiff's BAC may have disqualified him to act as a Mate on the date of his termination, Plaintiff generally met the "minimum objective criteria required for employment." *Wexler*, 317 F.3d at 576. Given that Plaintiff was qualified to operate as a Mate at the time of his termination, the analysis proceeds to the fourth element of a prima facie case of discrimination.

The fourth element of a prima facie discrimination claim requires Plaintiff to show that a similarly situated individual outside the protected class was treated more favorably. *Braithwaite*, 258 F.3d at 493. To satisfy this prong, Plaintiffs only must demonstrate "circumstances which support an inference of discrimination." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020). Furthermore, the person treated more favorably must be similarly situated in all relevant respects. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610–11 (6th Cir. 2002). Plaintiff argues that Plaintiff and Mr. Harvey are similarly situated in all relevant respects including age, experience, rate of pay, and tenure, with the only recognizable difference being their race. (Doc. # 41 at 6). Defendant does not contest these similarities, and points out a further similarity, specifically that both men were

randomly selected for an alcohol screen on October 24, 2023. (Doc. # 38 at 9). As employees of Defendant, the men were subject to the same alcohol and drug policy and faced the same consequences in accordance with the Policy if they were to fail an alcohol or drug screen. (Doc. # 38-8 at 2, 6).

Plaintiff has failed to establish that Mr. Harvey was treated more favorably. Mr. Harvey was sent home from work after testing at a BAC of 0.022 and 0.019 and allowed to return the following day to conduct another alcohol screening. (Docs. # 38-10 ¶¶ 13, 14). Mr. Harvey tested at a BAC of .000 on the following workday and was allowed to return to work. (Doc. # 38-10 ¶ 14). This course of action was in direct accordance with the Policy, which states that:

> An employee whose BAC is determined during work hours to be greater than .000 percent, but not more than .019 percent, will be sent home from work for the remainder of their scheduled workday and, upon reporting for their next workday, may be required to complete a breath alcohol test demonstrating a BAC of .000 percent before returning to work.
>
> An employee whose BAC is determined during work hours to be equivalent to or greater than .020 percent, but not more than .039 percent, will be sent home from work for the remainder of their scheduled workday and may be required to submit to an evaluation/rehabilitation program specified by the Company before returning to work. In addition, upon reporting for their next workday, the employee may be required to complete a breath alcohol test demonstrating a BAC of .000 percent before returning to work.

(Doc. # 38-8 at 6). Under either of Mr. Harvey's test results, the Policy affords him the right to appear the following day and complete a breath alcohol test to return to work. Id. Defendant applied the Policy equally to Plaintiff, given his BAC results. Plaintiff's two tests returned BAC results of .064 and 0.059, respectively. (Doc. # 38-10 ¶ 15). The Policy

10

dictates that for BAC results above .040, the employee has a "Prohibited Blood Alcohol Content" and is in violation of the Policy and will therefore be discharged. (Doc. #38-8 at 2, 6).

Plaintiff fails to identify any direct or circumstantial evidence of discrimination related to his termination beyond pointing to Mr. Harvey's ability to return to work the following day. (Doc. # 41 at 6). This is not evidence of discrimination or favorable treatment, and in fact reflects equal treatment among the two employees under the Policy. Both men had a BAC result above .000, but their test results varied significantly in terms of their consequences under the Policy. (See Doc. # 38-8 at 2, 6). Defendant followed the Policy as prescribed, and for that reason Plaintiff cannot demonstrate "circumstances which support an inference of discrimination," *Willard*, 952 F.3d at 808, to show that a person outside the protected class was treated more favorably. Given that Plaintiff cannot establish the fourth element, he cannot make out a prima facie case of discrimination. Consequently, summary judgment is warranted.

As Plaintiff cannot establish a prima facie case of discrimination, Defendant need not articulate a "legitimate, non-discriminatory reason" for the employment decision. *Braithwaite*, 258 F.3d at 493. Defendant satisfies this burden regardless, as terminating Plaintiff for violating the Policy was a legitimate, non-discriminatory reason for his discharge. *See Blazek v. City of Lakewood, Ohio*, 576 F. App'x 512, 516 (6th Cir. 2014) (holding that violating the employer's alcohol policies is a legitimate, nondiscriminatory reason for firing an employee). Given the inability of Plaintiff to establish a prima facie case of discrimination, in conjunction with the legitimate, non-discriminatory reason for

his termination, there is no genuine issue of material fact, and summary judgement is appropriate. Therefore, Defendant is entitled to judgment as a matter of law.

IV.     **CONCLUSION**

Accordingly, for the reasons stated here, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 38) is **GRANTED**. A **Judgment** in favor of **Defendant** will be entered contemporaneously herewith.

This 8th day of December, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2024\24-52 MSJ.docx